IN THE UNITED STATES DISCTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLLIN KELLY, | CIVIL ACTION NO.  2:20-cv-1356 |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| LITHIA MOTORS, INC. and BAIERL CHEVROLET, INC., | |
| Defendants. | |

## COMPLAINT

Plaintiff Collin Kelly files this Complaint against Lithia Motors, Inc. and Baierl Chevrolet, Inc. (collectively "Lithia Motors"), seeking relief for Lithia Motors' interference with his use of a protected employee benefit plan in violation of the Employee Retirement Income Security Act ("ERISA" – 29 U.S.C. §§ 1991 *et seq.*) and the unlawful termination of his employment due to its failure to comply with the requirements of the Family and Medical Leave Act ("FMLA" – 29 U.S.C. §§ 2601 *et seq.*).

## PRELIMINARY STATEMENT

1.      On the morning of November 17, 2018, Plaintiff's life was dramatically altered when the car he was driving was rear ended by a dump truck.

2.      After Plaintiff emerged from his crumpled company car, he notified his immediate supervisor that he had been in an accident and was being transported to the hospital.

3.      Due to the crash, Plaintiff was unable to work for a few days. However, because Lithia Motors fostered a work environment which discouraged employees from taking medical-related leave, Plaintiff returned to work before he had recovered from his injuries.

4.    As a result, Plaintiff's medical condition worsened over the next few months and his deteriorating health directly impacted his ability to perform his job.

5.    Lithia Motors prevented Plaintiff from taking leave pursuant to one of the company's long-term disability leave programs despite being aware of Plaintiff's deteriorating health.

6.    Lithia Motors never advised Plaintiff of his FMLA rights despite receiving notice of Plaintiff's serious health condition.

7.    As described in further detail below, Lithia Motors' interference with Plaintiff's use of an employee benefit plan protected by ERISA and failure to meet its obligations under the FMLA was deliberate and part of the company's culture which commoditizes its employees and discards them when they are unable to work due to serious health conditions.

## THE PARTIES

8.    Collin Kelly is an adult individual who resides at 234 St. Andrews Court Winchester, Virginia 22602.

9.    Lithia Motors, Inc. is a for-profit corporation incorporated under the laws of Oregon with corporate headquarters located at 150 N. Bartlett Street Medford, Oregon.

10.    Baierl Chevrolet, Inc. ("Baierl Chevrolet") is a for-profit corporation incorporated under the laws of Pennsylvania and a primary place of business located at 10430 Perry Highway, Wexford, Pennsylvania 15090.

11.    At all relevant times, Lithia Motors continuously employed more than 50 employees within a 75-mile radius of the Baierl Chevrolet worksite Plaintiff worked at and was a covered employer as defined by the FMLA.

12.     At all relevant times, the long-term disability leave program referenced below and administered by Lithia Motors was an employee benefit plan as defined by ERISA.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that Plaintiff's claims arise under the laws of the United States and Plaintiff seeks redress for violations of federal laws.

14.     The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that it is between citizens of different states, and the amount in controversy exceeds the sum of $75,000.00.

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (b)(2) as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district at a dealership owned and operated by Lithia Motors.

## FACTUAL BACKGROUND

**A.      Lithia Motors and the Changing Automotive Retail Industry**

      **i.       Development of Lithia Motors' business model**

16.     Lithia Motors began its operations in Ashland, Oregon in 1946 as a single car dealership. Since that time, Lithia Motors has become one of the nation's largest automotive retailers and a company that is publicly traded on the New York Stock Exchange.

17.     The strength of Lithia Motors' business revolves around its strategy of acquiring established, regional automotive franchises to increase the company's inventory and access to capital; diversify its product offerings; capture access to new technology; and expand the reach of Lithia Motors' brand.

18.    Lithia's acquisition strategy was driven, in part, by increased competition and disruptions to traditional revenue streams in the automotive retail industry. However, for Lithia Motors to capture the most value from its acquisition of other dealerships, it had to change the way those dealerships operated.

19.    Lithia Motors has since developed an organizational structure which shifts certain administrative and personnel functions to Lithia Motors' headquarters while providing dealerships with more control over revenue-impacting functions.

20.    Lithia's decentralized management structure provides its managerial employees with wide autonomy to control and impact nearly every aspect of a dealership's operations to ensure that Lithia's performance metrics are met.

### ii.    Lithia Motors' acquisition spree

21.    From 2016-2018, Lithia Motors aggressively pursued its acquisition strategy by acquiring automotive dealership groups around the country.

22.    During this 2016-2018 period, Lithia Motors increased its dealership count by nearly 100 stores.

23.    In May 2017, Lithia Motors acquired 14 automotive dealerships that previously operated under the Baierl Automotive Group brand.

24.    These 14 Baierl Automotive dealerships operated from 8 locations throughout the Southwestern Pennsylvania region and represented Lithia Motors' first foray into the Pennsylvania market.

25.    Lithia Motors initially retained the managers that had run the automotive dealerships it acquired from Baierl Automotive. However, personnel changes were soon made to those dealerships to maximize their value to the Lithia Motors Brand.

B.      **Upheaval of Collin Kelly's Career by Lithia Motors**

    i.      **A promising start to Collin Kelly's career with Lithia Motors**

26.     On June 4, 2018, Plaintiff began his employment with Lithia Motors as an Executive General Manager.

27.     Plaintiff came to Lithia Motors with a proven track record of success throughout his more than thirty years in the automotive retail industry

28.     Plaintiff's initial assignment was to turnaround the performance of a few Lithia Motors' dealerships in the Utica, New York region.

29.     In just a few months, Plaintiff accomplished his goals for Lithia Motors' dealerships in the Utica, New York region.

30.     Plaintiff was then tasked to oversee the Baierl Chevrolet dealership Lithia Motors acquired as part of the Baierl Automotive acquisition.

31.     Plaintiff began his assignment with Baierl Chevrolet on November 1, 2018, and immediately excelled, putting Baierl Chevrolet on a path to meet Lithia Motors' demanding performance metrics.

    ii.     **A violent car crash and Lithia Motors'**
        **willful ignorance of Collin Kelly's deteriorating health**

32.     After a few weeks with Baierl Chevrolet, Plaintiff was injured on November 17, 2018, when the company car he was driving was rear ended by a dump truck.

33.     During the crash, Plaintiff slammed his head against the car's steering wheel and/or dashboard area.

34.     The damage to Plaintiff's car was so severe that he was unable to remove himself from the car without assistance.

35.     Plaintiff was transported by ambulance from the scene of the accident to the Emergency Department at UPMC Mercy.

36.     At some point on November 17, 2018, Plaintiff notified his immediate supervisor, Shawn Kukic, that he had been involved in a car accident; the company car was totaled; and he was going to the hospital.

37.     Plaintiff was unable to immediately return to work because of the injuries he sustained from the November 17, 2018 car crash.

38.      However, and against his doctor's recommendation, Plaintiff returned to work because he was fearful that if he did not immediately return to work, he would be replaced.

39.     For the first week, Plaintiff was unable to drive himself to work and was limited to working a few hours each day as he was unable to focus; had difficulty reading and speaking; and was drained from doing the most routine of activities.

40.     Plaintiff developed other symptoms as he began to experience frequent bouts of severe dizziness.

41.     On November 28, 2018, Plaintiff was diagnosed with a concussion, prescribed medication, and ordered to follow up with a concussion clinic.

42.     During his employment with Lithia Motors, Plaintiff continued to receive treatment for his concussion, which required weekly treatments, vigilant monitoring of his symptoms, and a continued need for medication.

43.     Despite receiving medical treatment, Plaintiff continued to experience severe headaches and dizziness, which required visits to the Emergency Department.

44.     Lithia Motors was aware that Plaintiff was receiving treatment for his concussion and related symptoms.

45. Lithia Motors was aware of Plaintiff's deteriorating health as he exhibited changes to his normal disposition, continued issues with speaking and focusing on work, and difficulties with reading and writing.

46. Despite his deteriorating health, Plaintiff continued to work 6 days per week and averaged 60-70 hours of work per week.

47. It is believed that Lithia Motors purposefully withheld from Plaintiff information concerning his rights under the FMLA.

48. It is believed that Lithia Motors encourages and rewards dealerships that maximize employee productivity through any means, which includes discouraging the amount of time off Lithia Motors employees can take for medical-related reasons.

49. As a result, Lithia Motors avoided having a discussion with Plaintiff about his serious health condition, accommodations he might need, or what rights he had under the FMLA.

50. It is also believed that Lithia Motors interfered with Plaintiff's ability to take leave pursuant to the company's long-term disability leave program.

51. Plaintiff was eligible to begin using long-term disability leave through one the company's employee benefit plans on January 1, 2019.

52. However, following Plaintiff's car crash, Lithia Motors interfered with Plaintiff's ability to use long-term disability leave by purposefully withholding certain information about the program from him; concealing his eligibility to use long-term disability leave following the crash; and otherwise taking steps to prevent him from using long-term disability leave prior to the termination of his employment.

53. On March 15, 2019, Lithia Motors terminated Plaintiff's employment, stating that his firing was due to a reduction in staff.

54.    The stated reason for the termination of Plaintiff's employment, however, was pretext as Lithia Motors replaced Plaintiff with Mike Rossi soon after his firing.

55.    It is believed that Lithia Motors acted willfully and in reckless disregard of Plaintiff's rights under the FMLA when it failed to notify Plaintiff of his FMLA rights and interfered with his right to take FMLA leave for his serious health condition.

56.    Plaintiff was an eligible employee as defined by the FMLA because he had worked for at least 1,250 hours during the 12-month period immediately preceding his car crash on November 17, 2018 and worked at a Lithia Motors worksite with more than 50 employees.

57.    Plaintiff was also an eligible employee as defined by 29 C.F.R. § 825.110(d) of the FMLA as he would have remained an employee with Lithia Motors for more than 12 months but for the company's interference with Plaintiff's use of the company's long-term disability leave program.

58.    It is believed that Lithia Motors acted willfully and in reckless disregard of Plaintiff's rights under ERISA when it interfered with his ability to take long-term disability leave pursuant to one of the company's employee benefit plans.

59.    The long-term disability leave plan that Plaintiff was eligible to begin using on January 1, 2019 was a qualified employee benefit plan as defined by ERISA.

60.    As a result of Lithia Motors' actions, Plaintiff has suffered and will continue to suffer a substantial loss of earnings, including, but not limited to, loss of salary, bonuses, benefits, health insurance, life insurance, and other emoluments of employment.

61.    As a further direct and proximate cause of Lithia Motors' actions, Plaintiff's reputation and career have been damaged.  Plaintiff has also experienced physical pain and suffering, emotional distress.

**STATEMENT OF CLAIMS**

**COUNT I**
Violations of the Family and Medical Leave Act
(Plaintiff v. Lithia Motors)

62.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 61, as if fully set forth herein.

63.    Lithia Motors' dealerships are primarily responsible for implementing and enforcing workplace rules and regulations that have been created by executives at Lithia Motors' headquarters in Oregon.

64.    However, Lithia Motors' dealerships routinely receive input from Lithia Motors' executives on a wide variety of issues, including whether to grant or deny medical-related leave to an employee.

65.    Prior to his firing, Plaintiff met with and was evaluated by executives from Lithia Motors as part of regularly scheduled monthly reviews of each dealership.

66.    It is believed that during these visits, executives from Lithia Motors discussed and evaluated Plaintiff's health and work performance with managers from Plaintiff's dealership before terminating Plaintiff's employment.

67.    It is believed that the decision to terminate Plaintiff's employment was made in conjunction by Lithia Motors' employees at Baierl Chevrolet and Lithia Motors' executives.

68.    As such, the acts and omissions by Lithia Motors that are described in this Complaint constitute interference with and/or denial of Plaintiff's FMLA rights.

69.    As a proximate result of Lithia Motors' conduct, Plaintiff has or will suffer substantial harm, for which Plaintiff seeks general, compensatory, and liquidated damages.

9

## COUNT II
Violations of the Employee Retirement Income Security Act
(Plaintiff v. Lithia Motors)

70.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 69, as if fully set forth herein.

71.     Plaintiff brings this action for violations of Section 510 of ERISA under the civil enforcement provisions of 29 U.S.C. §§ 1132(a)(1)(b) and 1132 (a)(3).

72.     The long-term disability leave program that Plaintiff was eligible for is an employee benefit plan within statutory meaning of ERISA, 29 U.S.C. § 1140. Plaintiff was eligible to participate in and begin using this employee benefit plan on January 1, 2019.

73.     As described above, Lithia Motors interfered with Plaintiff's ability to use this employee benefit plan after his car crash.

74.     It is believed that the decision to interfere with Plaintiff's ability to participate in and begin using this long-term disability leave program was made in conjunction by Lithia Motors' employees at Baierl Chevrolet and Lithia Motors' executives.

75.     As such, the acts and omissions by Lithia Motors that are described in this Complaint constitute violations of Section 510 of ERISA.

76.     As a proximate result of Lithia Motors' conduct, Plaintiff seeks equitable restitution of benefits he would have received under the long-term disability benefit program and any other relief to which he is entitled.

10

<u>REQUESTS FOR RELIEF</u>

Accordingly, Plaintiff Collin Kelly requests that this Court enter judgment on his behalf and enter an order directing the award of other relief, as follows:

A.      Finding that Lithia Motors violated the FMLA;

B.      Finding that Lithia Motors violated ERISA;

C.      Awarding Plaintiff back pay, front pay, lost benefits, and other emoluments of employment and such other relief as is necessary to make him whole;

D.      Awarding Plaintiff liquidated damages under the FMLA;

E.      Awarding Plaintiff attorney's fees and costs;

F.      Awarding Plaintiff pre- and post-judgment interest as provided by law; and

G.      Awarding Plaintiff any other relief to which he is entitled and/or which this Court deems necessary and proper.

Respectfully submitted,

/s/ Sammy Y. Sugiura
Sammy Y. Sugiura
PA I.D. No. 209942
ssugiura@edgarsnyder.com
EDGAR SNYDER & ASSOCIATES
US STEEL TOWER, 10TH FLOOR
600 GRANT STREET
PITTSBURGH, PA 15219
TELEPHONE: (412) 391-2101
FACSIMILE: (412) 391-7032

**COUNSEL FOR PLAINTIFF**

11